# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

v.                                                    Case No. 07-20099-04-JWL
                                                         18-2163-JWL

**Yehia Hassen,**

      **Defendant.**

## MEMORANDUM & ORDER

In July 2009, defendant Yehia Hassen, pursuant to a plea agreement with the government, entered a plea of guilty to conspiracy to distribute and possession with intent to distribute 1000 kilograms or more of marijuana and 5 kilograms or more of cocaine and attempted money laundering. Under the terms of the plea agreement, Mr. Hassen anticipated a guideline range of 210-262 months (corresponding to a criminal history category of I and a total offense level of 37) but understood that the government would recommend the low end of the range and would file a § 5K1.1 motion if he met the cooperation requirements. Nonetheless, he contends that his attorney (hereinafter referred to as Mr. Hassen's "plea counsel") told him that he would ultimately receive a sentence below the ten-year mandatory minimum based on the level of cooperation that he had provided and would continue to provide to the government. In fact, when the trial court cautioned plea counsel during the plea colloquy that the typical recommendation for a cooperation reduction

was two offense levels, Mr. Hassen's plea counsel told the trial court "I would almost put this in writing, it will be significantly more than two levels because of what he's done."[1]

Following Mr. Hassen's guilty plea, he remained out-of-custody on conditions of release. Prior to sentencing, the government advised Mr. Hassen's plea counsel that it was going to recommend a one-level reduction and Mr. Hassen's counsel communicated that information to Mr. Hassen. The record reflects that Mr. Hassen's plea counsel also informed his client that he would have the opportunity to argue to the court that Mr. Hassen should receive a reduction of more than one level. On March 29, 2010, the day of Mr. Hassen's scheduled sentencing, the government filed a § 5K1.1 motion seeking a one-level reduction in Mr. Hassen's total offense level and, consistent with the plea agreement, recommended a sentence of 188 months, the low-end of the resulting guideline range. Mr. Hassen failed to appeal for sentencing and an arrest warrant was issued by the court. At that time, the government withdrew its § 5K1.1 motion. Mr. Hassen remained a fugitive until he was arrested in the Republic of Cyprus in April 2016. He waived extradition and was transported back to the United States.

In August 2016, the government filed a motion for a hearing to determine whether Mr. Hassen breached the plea agreement by failing to appear for sentencing and then absconding for six years. By filing the motion, the government sought to request a sentence other than the low-end of the guideline range, to request that Mr. Hassen not receive a reduction for acceptance of responsibility and to request an upward departure from the applicable guideline range. At the

---

[1] Judge Vratil of this District presided over Mr. Hassen's change-of-plea hearing and accepted Mr. Hassen's guilty plea. The trial court's exchange with plea counsel occurred after Mr. Hassen began asking questions and expressing concerns during the plea colloquy, requiring an off-the-record discussion between Mr. Hassen and his plea counsel.

same time, Mr. Hassen, through new counsel (hereinafter referred to as "post-plea counsel") filed a motion to withdraw from the plea agreement based upon ineffective assistance of counsel; to withdraw from the plea agreement because he did not enter that agreement knowingly and voluntarily; and to find that the government's one-level § 5K1.1 motion was made in bad faith.[2]

On September 15 and September 23, 2016, this court held an evidentiary hearing on the parties' motions. After that hearing, and as will be explained in more detail as necessary in this memorandum and order, the court granted the government's motion and denied Mr. Hassen's motion. On November 22, 2016, the court sentenced Mr. Hassen to 324 months imprisonment. By absconding from justice, Mr. Hassen lost the benefit of a three-level acceptance-of-responsibility reduction; lost the government's agreement to a two-level increase for role in the offense and instead received a three-level increase; and received a two-level increase for obstruction of justice. Mr. Hassen also lost the benefit of the government's one-level departure motion. Mr. Hassen, however, did receive the benefit of Amendment 782 and its two-level decrease under § 2D1.1. Mr. Hassen appealed his conviction and sentence to the Tenth Circuit, but later voluntarily dismissed that appeal.

This matter is now before the court on Mr. Hassen's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1090). In his motion, Mr. Hassen asserts four claims of ineffective assistance of counsel and one claim of prosecutorial misconduct. Mr. Hassen

---

[2] While Mr. Hassen's motion was filed as a motion to withdraw guilty plea under Rule 11(d)(2)(b), Mr. Hassen clarified at the hearing that he was seeking only to have the plea agreement set aside, that he wanted to waive his right to a trial, and he wanted to leave in place his guilty plea.

also makes an additional claim of cumulative error. As will be explained, the court denies each of Mr. Hassen's § 2255 claims and denies Mr. Hassen's request for an evidentiary hearing.

*Ineffective Assistance of Plea Counsel*

"To establish ineffective assistance of counsel, a defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). The court assesses "the reasonableness of counsel's performance in light of 'the facts of the particular case, viewed as of the time of counsel's conduct.'" *United States v. Deiter*, 890 F.3d 1203, 1209 (10th Cir. 2018) (quoting *Strickland*, 466 U.S. at 690). The court's review is "highly deferential," because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *See id.* (quoting *Strickland*, 466 U.S. at 689–90). To demonstrate prejudice in the plea context, a petitioner must show "a reasonable probability that the end result of the criminal process would have been more favorable" to him. *Moya*, 676 F.3d at 1213. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Deiter*, 890 F.3d at 1209 (quoting *Strickland*, 466 U.S. at 694).

For his first claim of relief, Mr. Hassen asserts that his plea counsel's performance was constitutionally deficient because plea counsel failed to fully investigate his case before advising Mr. Hassen to plead guilty. According to Mr. Hassen, if his counsel had fully investigated the quantity of drugs reasonably foreseeable to Mr. Hassen; Mr. Hassen's role in the offense; and the facts underlying the money laundering count, then his counsel would have realized that the "facts"

4

contained in the plea agreement concerning these issues were not supported by the evidence and he would not have advised Mr. Hassen to sign that agreement. Mr. Hassen contends that, if his counsel had conducted a full investigation into the facts of the case, Mr. Hassen would have "asked for a different plea agreement or would have gone to trial." In support of his argument, Mr. Hassen highlights, in summary fashion, his alleged minimal involvement in the conspiracy and his alleged lack of a supervisory role.

Because Mr. Hassen fails to establish that any additional investigation by his counsel would have yielded a more favorable result, his claim necessarily fails. *United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir. 2010) ("It is permissible for a reviewing court, if it so chooses, to proceed directly to the prejudice prong of the *Strickland* analysis."). By way of background, the plea agreement executed by Mr. Hassen established a base offense level of 36 based on the amount of cocaine and marijuana trafficked in the conspiracy and reasonably foreseeable to Mr. Hassen; established a two-level increase for Mr. Hassen's role in the offense; and established a two-level increase to the base offense level for the money laundering charge. There is absolutely no evidence in the record that the government would ever have offered Mr. Hassen a more favorable agreement than the one he executed. His contention, then, that he would have "asked for a different plea agreement" is flatly rejected. To the extent Mr. Hassen argued at the August 2016 hearing that he would have simply entered a plea of guilty without the benefit of a plea agreement, the record demonstrates that he would have received a lengthier sentence than he would have received under the agreement that he executed. The initial final presentence investigation report, developed from an independent review of all available case materials, assigned to Mr. Hassen a base offense level of 36, a three-level increase for role in the offense; and a two-level increase for

5

the money laundering charge. With a three-level reduction for acceptance of responsibility, the PSR ultimately calculated a total offense level of 38. Coupled with a criminal history score of I, Mr. Hassen's guideline range under a "straight plea" would have been 235 to 293 months as opposed to 210 to 262 months under the plea agreement (which, of course, would have been reduced to 188 to 235 months based on the government's departure motion). Simply put, nothing in the record supports a reasonable probability that Mr. Hassen, in any plea context, would have obtained a more favorable result than he would have obtained had he been sentenced under the plea agreement he executed.

This leaves only Mr. Hassen's assertion that he would have proceeded to trial—an assertion that is directly contradicted by his argument to this court in August 2016 when, in attempting to withdraw from the plea agreement, he expressly disavowed any interest in proceeding to trial and confirmed that he was guilty of the charges against him. Moreover, in light of the overwhelming evidence against Mr. Hassen and his admission of guilt, it is not reasonably probable that Mr. Hassen in fact would have proceeded to trial and, even if he had, it is not reasonably probable that the result of that proceeding would be more favorable than the terms of the plea agreement he executed. *See Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985) (strength of the government's case is often the best evidence whether defendant in fact would have changed his plea and insisted on going to trial). A conviction on the charges against him would have resulted in a substantially longer sentence than the sentence he faced under the plea agreement about which he now complains.[3]

---

[3] A conviction at trial would have resulted in a total offense level of at least 41 because Mr. Hassen would have given up the 3-level reduction for acceptance of responsibility.

For his second claim of relief, Mr. Hassen asserts that his plea counsel's performance was constitutionally deficient because plea counsel materially misinformed him about the consequences of his plea and the consequences of proceeding to trial. Specifically, Mr. Hassen asserts that his counsel erroneously told him that a conviction at trial could result in a life sentence; that his counsel failed to inform him that he was eligible for "safety valve" relief and could avoid a mandatory minimum sentence; that his counsel informed him that he would receive at least a two-level departure for his cooperation; and that his counsel failed to explain that a forfeiture judgment would be entered against him. As will be explained, Mr. Hassen has failed to show either deficient performance or prejudice under *Strickland*, and thus fails to demonstrate ineffective assistance of counsel which would entitle him to relief.

Mr. Hassen cannot establish a claim based on his counsel's advice that a conviction at trial could result in a life sentence. As explained above, a conviction at trial would have resulted in a total offense level of at least 41 (with a corresponding guideline range of 324 to 405 months imprisonment) and possibly 42 if the government had sufficient evidence of Mr. Hassen's role as an organizer or leader of the conspiracy (with a corresponding guideline range of 360 months to life imprisonment). His counsel's advice, then, to plead guilty in lieu of a potential life sentence was not deficient in the absence of any evidence that counsel's prediction was anything other than a good faith estimate. *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). Moreover, there is clearly no prejudice to Mr. Hassen. Even Mr. Hassen concedes in his motion that a "reasonable projection" of a guideline range upon conviction at trial "would be 292-365 months." That range, of course, is far greater than the range he would have received under the plea agreement negotiated by plea counsel and executed by Mr. Hassen. Mr. Hassen's own argument,

then, demonstrates that Mr. Hassen would not have obtained a more favorable result by proceeding to trial.

Mr. Hassen contends that his counsel failed to advise him that he was eligible for safety-valve relief based on Mr. Hassen's criminal history score and minimal role in the conspiracy. A defendant is eligible for relief under the safety valve if he or she can meet the following criteria:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a)(1)–(5). If the defendant satisfies all five criteria, the sentencing "court shall impose a sentence without regard to a statutory minimum." *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1185 (10th Cir. 2004). While Mr. Hassen acknowledges that the PSR assessed a three-level enhancement based on Mr. Hassen's supervisory role, he contends that he could have contested that finding if he had proceeded to trial or entered a straight plea. This argument is rejected. While Mr. Hassen could have argued to the court that he played a minimal role in the

8

conspiracy, the court is convinced that it would have adopted the findings in the PSR and the three-level role enhancement, rendering Mr. Hassen ineligible for safety-valve relief. As set forth in the PSR and the factual basis of the plea agreement executed by Mr. Hassen, extensive evidence exists supporting Mr. Hassen's role as a supervisor in the conspiracy. Thus, even assuming that plea counsel failed to advise Mr. Hassen about his alleged eligibility for safety-valve relief, it was not unreasonable for plea counsel to fail to raise that issue and there is no prejudice to Mr. Hassen because the record reveals no evidence that Mr. Hassen was in fact eligible for that relief.[4] Moreover, Mr. Hassen has not shown a reasonable probability that but for his plea counsel's failure to advise him about his purported eligibility for safety-valve relief, he would have rejected the plea offered by the government and proceeded to trial or entered a straight plea. *See United States v. Allen*, 2008 WL 320155, at *6 (N.D. Okla. 2008) (no deficient performance or prejudice from counsel's failure to argue that defendant was entitled to safety-vale relief when substantial evidence supported defendant's role as a leader or organizer).[5]

---

[4] Moreover, the applicable guideline range at the time of Mr. Hassen's initial sentencing in 2009, as recommended by the government, was 188 to 235 months—well above the 10-year mandatory minimum sentence. Mr. Hassen has not offered any plausible scenario under which his guideline range would be lower than the mandatory minimum sentence, rendering his safety-value argument moot. *See United States v. Hernandez*, 2010 WL 2400437, at *3 (D. Kan. 2010) (safety valve argument moot where bottom of applicable guideline range was greater than mandatory minimum).

[5] Mr. Hassen contends that his counsel's failure to advise him about safety-valve eligibility is akin to the facts of *Heard v. Addison*, 728 F.3d 1170 (10th Cir. 2013), where the Circuit reversed the district court's denial of a state court inmate's federal habeas petition based on his counsel's failure to advise him of viable defenses to culpability under the specific charges against him and his subsequent guilty plea. That case is clearly distinguishable. The issue of whether a defendant might be eligible for safety-valve relief at sentencing is clearly distinct from the issue of whether a defendant has viable defenses to culpability. Moreover, there has been no showing here that plea counsel overlooked a viable safety-valve argument.

Similarly, Mr. Hassen cannot establish a claim based on his counsel's advice that he would receive at least a two-level departure based on his level of cooperation. The court previously rejected this same claim in resolving Mr. Hassen's motion to withdraw from the plea agreement.[6] As the court explained at the hearing, the plea agreement executed by Mr. Hassen clearly did not guarantee the filing of a departure motion at all, much less guarantee a particular reduction that the government would seek. The court further held:

> [A]ssuming the defendant's counsel made that promise, and the record reflects that he essentially did, which is somewhat disturbing, Judge Vratil's questions to the defendant during the plea colloquy would and should have clarified to Mr. Hassen that counsel could not make such a promise.
>
> Specifically, Judge Vratil asked Mr. Hassen whether he understood that "even if the calculations come out to be exactly like it says in the plea agreement, that would put you at a level 37, low range would be 210 months, but the high end of that guideline range would be 262 months. Do you understand that?" . . . . Mr. Hassen responded that he understood.

Doc. 1079, Tr. at 172-73. In rejecting Mr. Hassen's ineffective assistance claim back in September 2016, this court emphasized that the plea colloquy before Judge Vratil confirmed at length that Mr. Hassen understood that his counsel could not guarantee him any particular sentence and that any predictions, guesses or assumptions made by his counsel could be incorrect. *Id.* at 173. Significantly, immediately after plea counsel stated on the record during the plea colloquy that he would "almost put this in writing, it will be significantly more than two levels because of what he's done," Judge Vratil "reiterated to defendant that the recitation that the

---

[6] Although Mr. Hassen's ineffective assistance claim was raised in the context of a motion to withdraw from the plea agreement, the court utilized the Strickland standard in resolving that claim. *See United States v. Lee*, 535 Fed. Appx. 677, 680 n. 2 (10th Cir. Sept. 5, 2013) (Circuit analyzes challenges to the assistance of counsel made in Rule 11(d)(2)(B) context under the cause-and-prejudice standard applicable to Sixth Amendment ineffective-assistance-of-counsel claims).

10

government had just provided was consistent with the defendant's understanding of the agreement, and that recitation included the defendant's acknowledgement that substantial assistance had not yet been provided and a determination of whether substantial assistance was ultimately provided was entirely up to the government." *Id*. at 174. During the plea colloquy, Mr. Hassen also confirmed that he was not relying on any verbal promises in entering his guilty plea. *Id*. This court further explained in rejecting Mr. Hassen's ineffective assistance claim at the September 2016 hearing:

> In fact, I think the record in this case establishes even more clearly than it might in some other case why the notion of ineffective assistance of counsel unfairly prejudiced Mr. Hassen is without merit because here the concerns that Mr. Hassen had were actually brought forth in open court in front of Judge Vratil at the plea hearing. She talked to him about them. She explained to him that despite the fact whatever [plea counsel] had said about putting things in writing that he couldn't rely on any such promise, and he decided to go ahead and plead guilty regardless. I think that's a very clear record that indicates that he simply had no basis to rely.
>
> Taken together Judge Vratil's questions and Mr. Hassen's responses at the plea colloquy, clarified that the defense counsel's . . . promise of a minimum two-level departure was not something that the defendant could or should rely on in any way in rendering a guilty plea.

*Id*. at 175. In his § 2255 petition, Mr. Hassen does not set forth any additional arguments or evidence that change in any way the court's September 2016 analysis. Most significant, however, is that Mr. Hassen cannot identify any prejudice that he suffered even assuming that his counsel was deficient by promising at least a two-level departure. He asserts that, absent that promise, he would have entered a straight plea or proceeded to trial. But as explained above, there is no reasonably probable scenario under which Mr. Hasssen would have obtained a more favorable result than the one he would have received through the plea agreement that he executed. For those reasons, Mr. Hassen's claim concerning plea counsel's promise that he would receive at least a

11

two-level departure fails. *See United States v. Clare*, 2016 WL 4707908, at *3 (10th Cir. Sept. 7, 2016) (no ineffective assistance of counsel occurred based on counsel's promise of probation when plea colloquy verified the defendant's understanding that any sentence calculations provided by counsel were only estimates and that defendant was not relying on any promises in pleading guilty).[7]

The last aspect of Mr. Hassen's second claim for relief is his argument that his counsel failed to explain to him that the plea agreement required him to agree to a forfeiture judgment in an amount exceeding $13 million. According to Mr. Hassen, he would not have signed the plea agreement had he been aware of his agreement to the $13 million forfeiture judgment. Mr. Hassen's argument is directly contradicted by Mr. Hassen's sworn testimony at the plea colloquy and by the express terms of the plea agreement he signed. During the plea colloquy, Judge Vratil asked Mr. Hassen whether he understood that he was agreeing "to forfeiture and you're agreeing that a money judgment would be entered against you in the amount of $13,071,705?" Mr. Hassen responded "Yes, ma'am." The first paragraph of the plea agreement executed by Mr. Hassen states that "Defendant further consents to the entry of a money judgment against him in the amount

---

[7] Of course, by filing the one-level departure motion, the government opened the door for plea counsel to argue to the court at sentencing that Mr. Hassen should receive more than one level based on his level of cooperation. In fact, plea counsel advised the court at the hearing that he intended to press the court for a greater reduction, as the plea agreement permitted him to do. By absconding instead of appearing for sentencing, Mr. Hassen denied his counsel the opportunity to make that argument and it is impossible at this juncture to speculate as to what reduction Mr. Hassen might have ultimately received.

of $13,071,705.00." Mr. Hassen, then, has shown no deficiency in plea counsel's performance nor any prejudice from that allegedly deficient performance.[8]

While Mr. Hassen purports to assert a separate claim in Ground Three that his plea of guilty was neither knowing nor voluntary, that claim is premised solely on plea counsel's purported ineffectiveness in the plea process and, accordingly, is not substantively distinct from Mr. Hassen's first two claims for relief. In other words, to support his third claim for relief, Mr. Hassen relies on the same defects alleged in his first two claims for relief. The court, then, does not separately address Mr. Hassen's third claim for relief as the court's analysis of the first two claims necessarily resolves the third claim. In short, because Mr. Hassen is not entitled to relief on his first two claims, Mr. Hassen cannot establish his third claim for relief.

*Prosecutorial Misconduct*

In his fourth claim for relief, Mr. Hassen asserts that he is entitled to resentencing based on prosecutorial misconduct. Specifically, he contends that the government's one-level departure motion was made in bad faith and in violation of Mr. Hassen's due process rights. To prevail on this claim, Mr. Hassen must show that the government's decision was "based on an unconstitutional motive" or was "not rationally related to any legitimate Government end." *Wade*

---

[8] Mr. Hassen contends that the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017) would provide a basis for him to contest the amount of the forfeiture allegation had he not agreed to that amount in the plea agreement. Of course, plea counsel's performance cannot be deemed deficient for failing to predict future case law. *See Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) ("[W]e have rejected ineffective assistance claims where a defendant faults his former counsel not for failing to find existing law, but for failing to predict future law and have warned that clairvoyance is not a required attribute of effective representation.").

13

*v. United States*, 504 U.S. 181, 185-85 (1992).⁹  At the hearing on Mr. Hassen's motion to withdraw his plea, Mr. Hassen's counsel expressly disavowed any argument that the government's decision was based on an unconstitutional motive such as Mr. Hassen's religion or national origin, *see* Doc. 1079, Tr. at 142, and Mr. Hassen does not attempt to revive that argument here.  Indeed, the arguments advanced by Mr. Hassen are the same as the arguments he advanced in support of his motion to withdraw his plea—arguments that the court rejected when it denied that motion. *See id*. at 176.  Essentially, Mr. Hassen urges that he was willing to do controlled buys for the government (an offer that the government rejected) and that he provided information about various drug dealers to the government.  At the September 2016 hearing and in its motion recommending a one-level reduction, the government explained that its recommendation was based on its evaluation of the worth of Mr. Hassen's cooperation and its assessment that his cooperation was untruthful, untimely and incomplete.  Mr. Hassen's evidence and argument on this point, then, amounts to nothing more than a disagreement with the government about the accurateness of the government's assessment concerning the level of substantial assistance that Mr. Hassen provided.  It falls far short of suggesting that the government's one-level motion was unconstitutionally motivated or that it was not rationally related to any legitimate government end.  *United States v. Williams,* 374 F.3d 941, 949 (10th Cir. 2004) (it is rational and legitimate for the government to

---

⁹ *Wade* (and seemingly every lower court case relying on *Wade*) involves the government's failure or refusal to file any departure motion at all.  The government suggests that *Wade* would not even apply to the situation here (where the government filed a departure motion albeit one that is less favorable than the defendant anticipated) and that the court cannot review that decision.  For purposes of Mr. Hassen's motion, the court assumes without deciding that Mr. Hassen can establish a claim for relief by showing that the government filed an unfavorable departure motion in bad faith.

evaluate the worth of a defendant's cooperation and to decide not to reward cooperation that is "incomplete, insincere or manipulative"). As the court explained at the hearing on Mr. Hassen's motion to withdraw his plea:

> I flatly reject any notion that it's an improper motive because [plea counsel] thinks he would be a better prosecutor than [the government] or that Mr. Hassen thinks he would be a better investigator than [the agent]; in other words, they've got the right to control how to develop the case. There has to be more than that. There has to be some invidious reason not just some prosecutorial exercise of judgment about how things are going to proceed.
>
> * * * *
>
> I'm left basically with the government's explanation that it made a decision based upon its opportunity, power and discretion that Mr. Hassen's cooperation, for any number of reasons set out in some detail in a 14-page motion, did not merit more than that request.

*Id*. at 176-77.[10] For these same reasons, the court rejects Mr. Hassen's fourth claim for relief.

*Post-Plea/Sentencing Counsel*

Mr. Hassen next asserts that his post-plea counsel provided constitutionally deficient assistance in two respects. First, Mr. Hassen asserts that his counsel failed to ask him a "crucial question" during the September 2106 hearing on the motion to withdraw from the plea agreement—"whether he would have signed the plea agreement if he was aware of its full

---

[10] In his reply, Mr. Hassen contends that the court improperly and without citation to authority rejected Mr. Hassen's prosecutorial misconduct claim because Mr. Hassen "waived" that argument by failing to appear at sentencing. Mr. Hassen misconstrues the court's statements. The court referenced Mr. Hassen's flight only to explain that Mr. Hassen might have received a larger cooperation reduction at sentencing (the plea agreement allowed him to do so) based on his arguments about the level of assistance that he provided, but he deprived the court and himself of that opportunity by failing to appear at sentencing.

15

ramifications," including "the extent of misinformation provided to Mr. Hassen" by his plea counsel. The court's reading of the transcript of that hearing indicates that post-plea counsel did ask that question of Mr. Hassen, who replied that he would not have executed the plea agreement:

> Q: Today you're just here at this point and arguing our motion to have your guilty plea pursuant to the plea agreement—
>
> A: Yes, sir.
>
> Q: --set aside so that you can maintain your guilty plea to the court?
>
> A: Uh-huh. Yes, sir.
>
> Q: Yes?
>
> A: Yes.
>
> Q: Okay. And—and you're basing that on the fact that but for [plea counsel's] assurances both at the time he was representing you before court that day of your guilty plea and then during the middle of your guilty plea and then the statements that he made on the record to the judge about the sentence that you would receive, that you would not have pled guilty pursuant to the plea agreement but for the combination of all of those things occurring?
>
> A: Yes.

Doc. 1078, Tr. at 101-02. The court, then, in making its rulings, understood Mr. Hassen's testimony to be that he would not have signed the plea agreement if he had understood the consequences of that agreement. And the court, of course, denied the motion to withdraw despite that testimony. Thus, even if post-plea counsel did not ask the precise question that Mr. Hassen believes he should have been asked, the court understood the nature of Mr. Hassen's testimony

on that point and denied the motion. Because Mr. Hassen cannot establish any prejudice with respect to post-plea counsel's alleged deficiency, this claim for relief is denied.[11]

Mr. Hassen also contends that his counsel failed to argue at the September 2016 hearing that the government's one-level departure motion amounted to bad faith.[12] Mr. Hassen asserts that if this argument had been made, then there is a reasonable probability that this court would have granted the motion to withdraw from the plea agreement. According to Mr. Hassen, post-plea counsel had "ample evidence" to argue that the government's motion was made in bad faith.

---

[11] Mr. Hassen seems to suggest that this court improperly relied "simply" on the plea colloquy in determining that Mr. Hassen's plea was knowing and voluntary and that if post-plea counsel had done a better job during the hearing, the court would have understood that Mr. Hassen in fact relied on plea counsel's assurances as to his ultimate sentence even though Mr. Hassen assured Judge Vratil in the plea colloquy that he had not relied on those assurances and even though Judge Vratil strongly advised Mr. Hassen that he could not rely on those assurances. Any suggestion that Mr. Hassen relied on assurances from his plea counsel are belied by his statements in open court during the plea colloquy—statements that Mr. Hassen are bound by and that the court properly relied on in resolving Mr. Hassen's motion. *Cunningham v. Diesslin*, 92 F.3d 1054, 1062 (10th Cir. 1996) (holding that defendant's plea was knowing and voluntary despite undisputed evidence that his attorney promised mandatory parole and despite argument that defendant entered plea based on belief that he would receive parole; district court properly concluded that defendant did not rely on advice of counsel based on statements made in open court during plea colloquy).

[12] Mr. Hassen also asserts in summary fashion that his plea counsel was deficient for failing to file a motion objecting to the one-level recommendation (on grounds of bad faith) at the time the government made that recommendation. This argument is meritless. Plea counsel clearly testified at the September 2016 hearing that he had every intention of challenging the government's motion at the sentencing hearing and he believed that he would have convinced the government and/or the court that Mr. Hassen's cooperation was worth more than a one-level reduction. Of course, Mr. Hassen deprived his counsel of the opportunity to make that argument by failing to appear for sentencing. And while there is no evidence that plea counsel intended to argue "bad faith" as a basis to challenge the § 5K motion, no evidence of bad faith exists in the record. Failing to assert bad faith, then, cannot be grounds for an ineffective assistance claim because that argument would have not have been meritorious. *United States v. Wallace*, 525 Fed. Appx. 851, 854 (10th Cir. 2013) (defendant cannot make a case for ineffective assistance without pointing to a winning argument passed over by his attorney).

17

But Mr. Hassen, in his motion to vacate, does not marshal any evidence from which post-plea counsel could have argued "bad faith" to the court. Rather, Mr. Hassen simply incorporates the arguments he made with respect to his fourth claim—namely, that he offered to do controlled buys and provided some information about various drug dealers and that the government should have permitted him to engage in controlled buys or otherwise assessed his cooperation more favorably than it did. Because Mr. Hassen directs the court to no evidence of bad faith on the part of the government, he cannot establish that his counsel was deficient for failing to make that argument. *United States v. Wallace*, 525 Fed. Appx. 851, 854 (10th Cir. 2013) (defendant cannot make a case for ineffective assistance without pointing to a winning argument passed over by his attorney).

*Cumulative Error*

Lastly, Mr. Hassen makes a claim of cumulative error in connection with the errors allegedly made by his plea counsel and post-plea counsel. A cumulative error analysis aggregates any errors that individually have been found to be harmless and analyzes whether their cumulative effect is such that collectively they can no longer be determined to be harmless. *Wilson v. Sirmons*, 536 F.3d 1064, 1122 (10th Cir. 2008). Because the court has found no merit to any of the issues raised by Mr. Hassen, there is no basis for applying a cumulative error analysis. *United States v. Gonzalez*, 596 F.3d 1228, 1244 (10th Cir. 2010).

**Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the claims denied above, for the same reasons stated, Mr. Hassen has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Hassen's motion to vacate under 28 U.S.C. § 2255 (doc. 1090) is denied and the court denies a certificate of appealability on those claims.

**IT IS SO ORDERED.**

Dated this 16th day of January, 2019, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge